ANTHONY F. SEEBERGER

*v.*

FANNIE WEINBERG *et al.*

*Filed at Ottawa, June 19, 1894.*

1. JUDICIAL SALE—*limitation of time for taking out deed.* Where the holder of a certificate of purchase of land fails to take out a deed under the same within five years from the expiration of the time for redemption, the statute makes the certificate void, and his right to obtain a deed is barred.

2. In such case, whether the loss of time is to be given the effect of extinguishing the right of the holder of the certificate of purchase, or of merely barring his remedy, he will have no further title or interest in the premises described in the certificate, which either he or his grantee can enforce either at law or in equity. After such lapse of time he, for all practical purposes, will become a stranger to the property.

3. The holder of a certificate of purchase of land, after the lapse of five years from the time he was entitled to a deed, made a contract for the sale of the premises without taking out his deed. The contract was canceled by mutual consent on discovery of the defect in the title,

24—151 ILL.

and the vendee bought the title of the heirs of the original owner, and took possession: *Held,* that the vendee had the right to make the purchase from the heirs, notwithstanding the former relations of the parties, and that the holder of the certificate of purchase could not avail himself of the vendee's purchase from the heirs.

4. VENDOR AND PURCHASER—*vendee purchasing outstanding title.* The purchaser of land, though in possession under his contract, is under no obligation to maintain his vendor's title to the premises, and is not forbidden by law to buy in an outstanding title to the premises, and to assert such title as against his vendor.

5. SAME—*purchaser concealing facts—who may complain.* If the vendee of land purchases an outstanding title, and in so doing fails to disclose to her grantors the true nature and extent of their interest, or misleads them in respect thereto, the grantors alone can take advantage of the fraud.

APPEAL from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding.

Messrs. PENCE & CARPENTER, for the appellant:

Wherever one person is placed in such relation to another by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated, and no party will be permitted to purchase an outstanding interest when he has a duty to perform which is inconsistent with the character of purchaser. 1 Perry on Trusts, sec. 166; *Keech* v. *Sanford,* 1 Leading Cases in Eq. (4th Am. Ed.) 62; *Davis* v. *Hamlin,* 108 Ill. 39, 48; *Allen* v. *Jackson,* 122 id. 571; *Vallette* v. *Tedens,* 122 id. 617; *Reed* v. *Peterson,* 91 id. 288; *Stewart* v. *Duffy,* 116 id. 47; *Holridge* v. *Gillespie,* 2 John. Ch. 30, 33; *Morgan's Heirs* v. *Boone's Heirs,* 4 B. Monroe, 291; *Wood* v. *Perry,* 1 Barbour, 114, 134.

The attorneys of Mrs. Weinberg were also the attorneys of the Bank of Commerce, which made the loan of money upon these premises, and the knowledge of the attorneys,

acquired by them in the acquisition of the Farr title, will be charged to the Bank of Commerce, whose attorneys they also were, and if the title of Mrs. Weinberg fails, so will the title of the Bank of Commerce. *Distilled Spirits,* 11 Wallace, 364; *Bradley* v. *Riches*, 38 Law Times R. (N. S.) 810; *Williams* v. *Tatnall*, 29 Ill. 553; *Dunlap* v. *Wilson*, 32 id. 517; *Dresser* v. *Norwood*, 17 Com. Bench (N. S.) 466.

Messrs. HAMLINE, SCOTT & LORD, also for the appellant:

By reason of the representations made by Felsenthal and Max Weinberg to the Farrs in procuring the quit-claim deed, they assumed the position of voluntary agents of Seeberger, and the results of their actions, within such agency, inured to the benefit of their agents. *Casey* v. *Casey*, 14 Ill. 117; *Davis* v. *Hamline*, 108 id. 39; *Dennis* v. *McCagg*, 32 id. 429; *Conant* v. *Riseborough*, 139 id. 391.

Fannie Weinberg having obtained the title through false representations, and under such circumstances as that she ought not, in equity, to hold and enjoy the beneficial interest in the property, a court of equity will raise a trust by construction, and convert her into a trustee for the benefit of Seeberger. *Beach* v. *Dyer*, 93 Ill. 298; 1 Perry on Trusts (3d Ed.) 201; *Roller* v. *Spilmore*, 13 Wis. 29; *Brown* v. *Lynch*, 1 Paige, 147; *DeLeon* v. *Higulra*, 15 Cal. 482; *Seichiret's Appeal*, 66 Pa. St. 241.

By reason of the contract existing between Fannie Weinberg and Anthony F. Seeberger at the time of the transaction in question, the title acquired by her from the Farrs inured to the benefit of Seeberger.

The Bank of Commerce and its officers were put on notice of the rights of Seeberger at the time of the making of the trust deed and note from Fannie and Max Weinberg to Hermann Felsenthal, by facts appearing of record, and also

by the knowledge of their attorneys, and, therefore, said trust deed is void.

Before crediting the sum of six thousand dollars to the said Fannie Weinberg, the Bank of Commerce, and Felsenthal and Gross had full notice of the rights of complainant, by reason of the suit brought by Sarah Ann Farr, and the matters and things contained in the bill filed by her.

Before the payment of all but two thousand eight hundred and fifteen dollars and forty cents of the said six thousand dollars, said Bank of Commerce, and said Felsenthal and Gross had full notice of the rights of the complainant, by reason of the bill filed by him in this cause. *Stokes* v. *Riley,* 121 Ill. 166; *Redden* v. *Miller,* 95 id. 336; *Russell* v. *Ranson,* 76 id. 168; *Brown* v. *Welch,* 18 id. 343; *Moshier* v. *Knox College,* 32 id. 164; *D' Wolf* v. *Pratt,* 42 id. 198; *Watt* v. *Scofield,* 76 id. 264.

Mr. GEORGE W. SMITH, for the appellee, Weinberg:

Having failed to take out a master's deed within the time required by law, Seeberger had no title to the property in controversy. He had no equitable claim thereto. In this instance equity follows the law. R. S. 1874, ch. 77, sec. 30; *Ryhiner* v. *Frank,* 105 Ill. 326; *Peterson* v. *Emmerson,* 135 id. 55.

Mrs. Weinberg would not have been precluded, if the relation of vendor and vendee had existed between Seeberger and herself, from purchasing the Farr title, and asserting it against him. *Green* v. *Dietrich,* 114 Ill. 636.

Seeberger voluntarily terminated the relation of vendor and vendee, and by his deed to his daughter put it beyond his power to retract.

From June 30, 1892, the date of record of that deed, to August 26, 1892, the date of the deed from the daughter to the father, nearly two months, Seeberger was not in position to perform the contract, if originally he had title.

During this period a large share of the improvements were made.

Nothing passed by these deeds but such right or title as the grantors respectively had. They did not confer or transfer a right to enforce duties arising out of a supposed trust relation.

The daughter did not object to the improvement. The reconveyance gave no right of action for what took place in her time. *C. & A. R. R. Co.* v. *Maher*, 91 Ill. 312.

If Mrs. Farr made her deed inadvertently, for a grossly inadequate consideration, or under such circumstances as to call for a reconveyance, she, and those claiming under her, only, are entitled to file a bill for that purpose. She has already done so, but it was at her election not to do it; Seeberger could neither compel her nor appropriate the results.

He is now seeking the benefit of what he claims was a fraud practiced by his agent. It is the same as if he personally had practiced it. 1 Perry on Trusts (3d Ed.), 202.

Messrs. FELSENTHAL, D'ANCONA and RINGER, for the appellee, Bank of Commerce:

The Bank of Commerce occupies the position of a *bona fide* purchaser for value, to the extent of its loan, $6,000. *Stokes* v. *Riley*, 121 Ill. 166; *Johnson* v. *Baker*, 38 id. 98; *Stephens* v. *Ins. Co.*, 43 id. 327; *Hays* v. *Cassell*, 70 id. 669; *Russell* v. *Ranson*, 76 id. 167; *Watt* v. *Scofield*, 76 id. 261; *Brown* v. *Welch*, 18 id. 343; *Moshier* v. *Knox College*, 32 id. 164; 1 Morse on Banking, sec. 312.

The certificate of purchase became void after five years without taking out a deed. *Ryhiner* v. *Frank*, 105 Ill. 326; *Peterson* v. *Emmerson*, 135 id. 55; *Osborne* v. *Williams*, 34 Ill. App. 418.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

On June 3, 1872, Anthony F. Seeberger, the complainant, being the owner of two lots of land in the City of Chi-

cago, conveyed them to John Farr for $1,700, and for $900 of the purchase money, Farr executed to Seeberger his three promissory notes for $300 each, payable in one, two and three years, with interest at the rate of eight per cent per annum, and secured the same by deed of trust on the lots conveyed, to Leonard Hodges, as trustee. On February 18, 1873, Farr conveyed the lots to Sarah Ann Farr, his wife, and subsequently died. Default having been made in the payment of the notes, Seeberger, on March 18, 1875, brought his bill in chancery to foreclose the deed of trust, and a decree of foreclosure was entered January 3, 1876. Under this decree the lots were sold by the master, February 14, 1876, Seeberger bidding therefor the sum of $1,246.67, and becoming the purchaser. On the same day a master's certificate of sale was duly issued to him, and a duplicate thereof placed on record. From this sale no redemption was ever made.

So far as appears, and so far as Seeberger is able to show by proof, no master's deed was ever taken out by him for the premises thus purchased. It appears, however, that, from the date of the sale, he claimed to own the lots, and paid all taxes and assessments thereon, and built sidewalks on the streets adjacent thereto. At the time of the sale the lots were vacant and unoccupied, and so remained until some time in June, 1892.

In May, 1892, Fannie Weinberg, being desirous of purchasing a place upon which to erect a sausage factory, through Max Weinberg, her husband, who acted as her agent in the matter, fixed upon the lots in question as a suitable site for her proposed factory, and for the purpose of ascertaining to whom the property belonged, applied to Frank Reidle & Company, real estate agents, and was informed by them that the lots belonged to Seeberger. Acting on this information, she entered into negotiations with Seeberger for the purchase of the lots, which negotiations resulted in the execution of a written contract, dated May

18, 1892, by which Seeberger agreed to sell, and Fannie Weinberg agreed to buy, the lots for $3,500. The agreement acknowledged the payment by the purchaser of $250 to be applied upon the purchase when consummated, and the purchaser agreed to pay the further sum of $3,250 within five days after the title had been examined and found good, provided a good and sufficient warranty deed, conveying to the purchaser a good title to the premises, should be then ready for delivery. It was further provided that a complete abstract of the title, or a merchantable copy, with a continuation thereof brought down to date, should be furnished within a reasonable time, and that in case the title, on examination, should be found materially defective, within ten days after the abstract should be furnished, then, unless the defect should be cured within sixty days after notice thereof, the money paid should be refunded, and the contract become inoperative.

Within a few days after the date of the contract, Seeberger furnished to Mrs. Weinberg an abstract of title brought down to date, and she thereupon placed the abstract in the hands of her attorneys, Felsenthal, D'Ancona & Ringer, for examination. About June 18, 1892, Felsenthal informed Seeberger's agent that there was a defect in the title, and a day or two afterward the agent called on him, and was informed that, so far as appeared from the abstract, no deed had ever been issued on the certificate of purchase by the master in chancery, Felsenthal at the same time inquiring whether Seeberger had such deed and had failed to record it.

Seeberger, being very busy at that time with other matters, delayed calling on Felsenthal until June 24, and Felsenthal then informed him that no master's deed had been placed on record, and Seeberger thereupon exhibited to him the master's certificate of purchase, supposing that to be the missing deed. Felsenthal informed him that the paper

he had was only the master's certificate, and not a deed, and that if he had no deed he had lost his title.

The evidence as to what occurred at this interview is conflicting. According to the testimony of Felsenthal and of Weinberg, who was also present, Felsenthal told Seeberger, when he produced the master's certificate, that the paper would not do; that if he had no other paper, he had no title; that there must be a master's deed, or they would be obliged to reject the property; that Seeberger then said that he had no other paper and could produce no other, and that if they required a master's deed, he would have to declare the contract off right there, and instruct his agent to refund the money. Seeberger, on the other hand, denies that he proposed at that interview to put an end to the contract, but claims that he said he would make further investigations in relation to the matter, and bring it to a final conclusion without delay. It seems, however, that he thereupon went to his solicitor who had foreclosed the mortgage, and made further investigation, but failed to find that any deed had ever been issued. At that time much more than five years had elapsed since the expiration of the equity of redemption.

It appears that Felsenthal, on discovering the absence or probable absence of a master's deed, made search for the heirs and legal representatives of John Farr, and succeeded in finding one of his daughters, who was then employed as a stenographer in the office of George Payson, an attorney of Chicago. Felsenthal thereupon entered into negotiations with Miss Farr for the purchase of the interest of her mother and the heirs at law of Farr in the premises. These negotiations lasted several days, and finally resulted in an arrangement, by which, in consideration of $200, they agreed to quit-claim all interest in the premises derived by them through John Farr. Although Farr in his lifetime had conveyed the premises to his wife, Felsenthal required the execution of a quit-claim deed not only by her, but by

all the heirs at law of Farr, and he thereupon drew up a quit-claim deed for them to execute, bearing date June 21, 1892, and that deed was executed by the grantors therein named and acknowledged June 22, 1892, and left in escrow in the hands of Payson to be delivered on the payment of the $200 agreed upon. In this deed William Kornell, a cousin of Mrs. Weinberg, was named as grantee. Immediately thereafter Kornell executed a warranty deed, in which a consideration of $3,000 was expressed, conveying the premises to Mrs. Weinberg.

There is evidence tending to show that Felsenthal told the heirs of Farr, in substance, that he had a client who was about to buy the property from Seeberger for $3,500 or $3,600; that on examining the title, he had found a defect in it, the defect consisting of the fact that their names still remained in the title, and must be eliminated therefrom before a good title could be obtained; that some attorneys would pass the title as it was, but that he preferred to clear it up; that he could take the matter into court and have it cleared up for a small sum, but that he preferred to give the money to them instead, and he offered them $100 and afterward $200 for their quit-claim. These negotiations with the heirs of Farr were conducted by Felsenthal without informing Seeberger and without his knowledge. Immediately after the interview of June 24, between Felsenthal and Seeberger, Felsenthal paid the heirs of Farr the $200 agreed upon and received from Payson the quit-claim deed, and shortly thereafter, Mrs. Weinberg, having obtained her deed from Kornell, took possession of the property.

On July 28, Seeberger, acting, as is claimed, on the advice of counsel, executed a deed purporting to convey the premises in question to his daughter, and gave instructions to his agent to take possession of the property and fence it; but the agent, on going to the property, found Mrs. Wein-

berg already in possession. The next day Seeberger wrote to Felsenthal the following letter:

"CHICAGO, June 29, 1892.

"EDWIN I. FELSENTHAL, Esq., Attorney,

"125 LaSalle St., City.

"*Dear Sir:*—I called at the office of Judge Garnett to-day. He was a member of the firm acting as my attorneys in the foreclosure proceedings, and I find that he had sent for the abstract to the property in the contract with Mr. Weinberg, but I have been so hurried that I have found it impossible to take the time to locate the papers. Owing to my removal from my former place of business, my papers have become somewhat deranged. I am confident I can find the necessary papers, but it is impossible to do so in the time Mr. Weinberg wishes. As he explained to me that he wished to erect a building on the lots in order to be ready in time for his business purposes, in justice to him I feel that I ought to release him at once from his contract, because it is utterly impossible for me to give the matter the necessary attention at the present. I therefore authorized Messrs. Frank Reidle & Company to refund the money Mr. Weinberg has paid upon the contract upon his surrendering the same, thus giving him an opportunity to make other arrangements. I have the abstracts in my possession.

"Respectfully yours,

"A. F. SEEBERGER."

On the same day he wrote a letter to his agents, Frank Reidle & Co., as follows:

"*Gentlemen:*—I have written Mr. Felsenthal, the attorney of Mr. Weinberg, that I find it impossible to meet the objection he urges against the matter of title, owing to the fact that my papers have been misplaced in consequence of removal and hurry of business.

"In view of the fact that Mr. Weinberg is anxious to have this matter closed up without further loss of time, I

have concluded to request you to take up the contract of Mr. Weinberg and refund the money he has paid. It might be best for you to notify him to call on you for this purpose. I will see you about the matter of commissions later. I have the abstract in my possession.

"Respectfully yours,

"A. F. SEEBERGER."

"P. S. I return the Weinberg contract herewith."

On June 30, Weinberg called on Seeberger's agents, they having then received the foregoing letter from Seeberger, and the written contract for the sale of the land by Seeberger to Mrs. Weinberg was canceled by tearing off the signatures, and the money deposited on the contract by Mrs. Weinberg was returned to her.

It appears that on July 22, 1892, Fannie Weinberg and her husband, for the purpose of raising money with which to erect their proposed factory on the premises, executed a trust deed thereon to Hermann Felsenthal as trustee, and to Jacob Gross as successor in trust, to secure the promissory note of Fannie Weinberg and Max Weinberg for $6,000, payable to the Bank of Commerce of Chicago, five years after date.

On September 17, 1892, Seeberger having obtained a deed from his daughter purporting to reconvey the premises to him, filed his bill in chancery, making Fannie Weinberg, Max Weinberg, her husband, Hermann Felsenthal as trustee, and Jacob Gross, his successor in trust, Sarah Ann Farr and the Bank of Commerce, parties defendant. The bill offers to pay Mrs. Weinberg the $200 paid by her to the heirs of Farr, and prays for a decree requiring Fannie Weinberg, and her husband, Max Weinberg, to execute and deliver to the complainant a deed conveying to him the property in question, and that the complainant's title thereto be confirmed; that the trustee in the deed of trust, his successor in trust, and the holder of the note thereby

secured, be decreed to deliver up the deed of trust to be canceled and to execute to the complainant a release therefrom.

The suit was afterward dismissed as to Sarah Ann Farr on motion of the complainant, and the cause being subsequently heard on pleadings and proofs, a decree was rendered dismissing the bill at the complainant's costs for want of equity. To reverse that decree, the complainant brings the record to this court by appeal.

Section 30, of chapter 77, of the Revised Statutes, provides, that when the premises described in a certificate of purchase shall not be redeemed in pursuance of law, the legal holder of the certificate shall be entitled to a deed therefor at any time within five years from the expiration of the time of redemption, and that when the deed is not taken out within the time thus limited, the certificate of purchase shall be null and void. If, then, it be assumed, as seems most probable, that Seeberger failed to obtain a master's deed, his right to obtain such deed is barred by limitation, and his certificate of purchase has ceased to be of any validity. Whether the lapse of time is to be given the effect of extinguishing his right or of merely barring his remedy, he has no further title or interest in the premises described in the certificate, which either he or his grantee can enforce, either at law or in equity. At the expiration of the five years he became, for all practical purposes, a stranger to the property, and had no more dominion over it or power to convey it than he would have had if he had never had any interest therein.

The statute above referred to was considered by this court in *Ryhiner* v. *Frank*, 105 Ill. 326, and it was there held that where land was sold on execution, and the sheriff's deed was not taken out within five years from the expiration of the statutory period of redemption, the certificate of purchase becomes void, so that a sheriff's deed subsequently issued thereon is a nullity, and passes no title. So,

in *Peterson* v. *Emmerson*, 135 Ill. 55, it was held that after the expiration of the five years given by the statute for taking out a master's deed, the certificate becomes a nullity, and a court of equity can not compel or authorize the execution of a deed to the purchaser or his assignee by the officer whose duty it is to make such deeds.

Such being the condition of Seeberger's title, it is difficult to see upon what legal or equitable principle he can now be entitled, as against the grantees of Farr, to any portion of the relief prayed for in the bill. His certificate of purchase being *functus officio* and void, he certainly could have had no remedy against the heirs or representatives of Farr, if they had still retained their interest. No remedy could have been asserted by him upon the certificate, as that had become a nullity, nor could he have enforced any remedy upon the original mortgage, as that remedy had been completely exhausted by the foreclosure and sale.

But it is claimed that Mrs. Weinberg, by entering into a contract of purchase with Seeberger, assumed to him such fiduciary relations as made it impossible for her to buy in an outstanding paramount title for her own benefit, but that her purchase must be claimed to have been made in aid of Seeberger's title and of the execution by him of his contract with her, and so to have been made practically for Seeberger's benefit. We have carefully considered the reasoning and authorities submitted by counsel in support of this contention, and we are disposed to think that they have no application to this case. In *Green* v. *Dietrich*, 114 Ill. 636, it was held that a purchaser of land, though in possession under his contract of purchase, is under no obligation to maintain his vendor's title, and is not forbidden by law to buy in an outstanding title to the premises, and assert such title as against his vendor. In the opinion it was said: "The vendee is under no obligations to maintain his vendor's title, and there is no policy of law that

forbids the vendee in possession to buy in an outstanding title to the premises and assert it against his vendor, other-wise it might be asserted by the owner, or a stranger might buy it, and it would be lost to both." The rule established by this decision seems to us to be fully applicable here, and to be conclusive against the appellant of the contention sought to be made by him.

Here, the interest in the land acquired by Seeberger by means of his purchase at the foreclosure sale, and evidenced by the certificate of purchase, having been barred by limita-tion, the only title to the property capable of assertion was that remaining in the grantee or legal representatives of Farr, the mortgagor. If Mrs. Weinberg had not succeeded in securing that title by purchase from those in whom it was vested, it might have been asserted by them, or pur-chased by some third party, to the exclusion of both her and Seeberger. Mrs. Weinberg was therefore at liberty, so far, at least, as Seeberger was concerned, to obtain a conveyance of it to herself, on the best terms she was able to get, and she violated no duty which she owed to him, by entering into negotiations for its purchase, without ap-prising him of her intentions in that respect.

If it be a fact, as the appellant asserts, that Mrs. Wein-berg's attorney failed to disclose to Mrs. Farr and her children the true nature and extent of their title and interest, or misled them in respect thereto, that is a matter of which they alone can complain and in respect to which the appellant has no interest whatever. If Mrs. Farr and her children were defrauded, they are the only parties entitled to a remedy for the fraud, and as they are not before the court, all allegations of fraud in the dealings of Mrs. Weinberg's attorney with them are immaterial.

It may be noticed that at the time these negotiations were going on, it was not certainly known whether the ap-pellant had, in fact, taken out his master's deed or not, the claim on his part still being that he had such deed and

would ultimately be able to find it, while the strong proba-
bilities arising from all the circumstances were that in this
he was mistaken. Of course, if a master's deed was in ex-
istence, the title of Mrs. Farr and her children was abso-
lutely extinguished, and they had no interest to convey.
Mrs. Weinberg, in purchasing from them, had to run that
risk, and the same possibility confronted the Farrs. As
Mrs. Weinberg was anxious to obtain title to this particular
property, it was important for her, if Seeberger's title
failed, as it was highly probable it would, to get into her
hands the title held by the Farrs. These circumstances
are important as throwing light upon the transactions with
the Farrs, but we are unable to see how the representations
and disclosures made by Felsenthal, or the amount of the
consideration paid to them, is of the least importance in
determining Seeberger's title to relief.

But there seems to us to be another reason why the com-
plainant is not entitled to the relief prayed for in the bill.
By the contract with Mrs. Weinberg it was provided, that
if the title shown by the abstract should be materially de-
fective, and the defect should not be cured within sixty
days, the contract should become inoperative, and the
money deposited by Mrs. Weinberg should be refunded.
The abstract disclosed a material defect in the title, and
Seeberger, by the terms of the contract, had sixty days to
cure it. He chose, however, in consideration of Mrs.
Weinberg's haste to have the transaction closed up, to
waive the sixty days and allow the contract to be immedi-
ately declared void, and he accordingly sent the contract
to his agents, and they, acting on his instructions, canceled
and surrendered it, and paid back to Mrs. Weinberg the
money she had deposited.

The cancellation of the contract was made by mutual
consent of both parties, and in pursuance of its own terms.
Upon what principle Seeberger can now disregard its can-
cellation and set up the same equitable rights that he

would have had if the contract were still subsisting, we are at a loss to imagine. The bill does not seek to have the cancellation of the contract set aside, nor are any facts shown upon which a claim to that species of relief could be based. The theory of the bill seems to be, that the relation of vendor and vendee exists between the complainant and Mrs. Weinberg, and that, by virtue of that relation, the outstanding paramount title bought in by Mrs. Weinberg should enure to his benefit. But the relation of vendor and vendee was terminated by the cancellation of the contract, and with its termination all equities based upon it necessarily fell with it.

We are of the opinion that the complainant has failed to show any title to the relief prayed for, and that his bill was properly dismissed for want of equity. The decree of the Superior Court will accordingly be affirmed.

*Decree affirmed.*

Mr. JUSTICE MAGRUDER took no part in the decision of this case.